**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE TRACEY TYER,**<br>*Plaintiff*<br><br>**v.**<br><br>**PEACHTREE HOTEL GROUP II, LLC, ET AL.,**<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 1:26-CV-00744-ADA-DH** |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Peachtree Hospitality Management, LLC's ("PHM") and Peachtree Hotel Group II, LLC's ("PHG," together with PHM, "Peachtree") opposed motion to compel arbitration and stay litigation, Dkt. 23, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant Peachtree's motion.

## I. BACKGROUND

This case involves claims arising under the Employment Retirement Income Security Act ("ERISA") and Title VII of the Civil Rights Act. Dkt. 1, at 11-13. Plaintiff Charlotte Tracey Tyer alleges that while she was working for PHM, she engaged in protected activity. Dkts. 1, at 8; 23, at 2-3. Specifically, she claims that because she declined to terminate another employee based on that employee's national origin and detention by U.S. Immigration and Customs Enforcement, Peachtree and other defendants retaliated against her by blocking communication, deviating from typical

discipline processes, and terminating her employment. Dkts. 1, at 8-11; 23, at 3. Tyer then sued Peachtree, as well as Defendants Tribute Hospitality, LLC and San Antonio Riverwalk PHG FB, LLC (with Peachtree, "Defendants"). Dkts. 1, at 2-3; 23, at 3. She alleges that Defendants violated ERISA by interfering with her attainment of her employee benefits, breached their fiduciary duty under ERISA, and violated Title VII by retaliating against a protected activity. Dkt. 1, at 11-13.

Peachtree now seeks to compel arbitration of the Title VII claims and stay this case pending arbitration. Dkt. 23, at 2.

## II. LEGAL STANDARD

The Fifth Circuit has emphasized the strong federal policy in favor of arbitration. *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Under the Federal Arbitration Act ("FAA"), arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, enforcement of an arbitration agreement requires two analytical steps: "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Ordinarily, both questions are for the court. *Id*. But where the arbitration agreement contains a delegation clause giving the arbitrator the primary authority to rule on the arbitrability of a specific claim, the arbitrator decides the second question. *Id*.

Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Thus, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he FAA requires courts to first 'determine whether a valid arbitration agreement exists' before granting motions to compel arbitration." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (quoting *Henry Schein*, 586 U.S. at 69). Therefore, "courts must decide at the outset whether an enforceable arbitration agreement exists at all. The parties cannot delegate disputes over the very existence of an arbitration agreement." *Newman*, 23 F.4th at 398 (cleaned up).

## III. DISCUSSION

Peachtree moves to compel Tyer to arbitrate because she agreed to be bound by a dispute resolution agreement. Dkt. 23, at 3-5. Tyer presents multiple objections to the agreement, arguing for various reasons that the agreement should not be enforced. *See* Dkt. 26, at 4. In reply, Peachtree points out that under the agreement

itself, Tyer's claims regarding enforceability of the agreement must be decided by an arbitrator. Dkt. 31, at 6-7; *see also* Dkt. 23, at 21. The undersigned finds that the parties entered into a contract with a valid arbitration agreement and that the agreement delegates questions about its enforceability to an arbitrator. The District Judge should thus grant Peachtree's motion to compel arbitration

The first step a court must take in deciding whether to enforce an arbitration agreement is "contract formation—whether the parties entered into *any arbitration agreement at all*." *Kubala*, 830 F.3d at 201. "Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (internal quotation marks omitted) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "Evidence of mutual assent in written contract generally consists of signatures of both parties and delivery with intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). A valid contract also requires consideration. *In re Capco*, 669 F.3d at 280.

Tyer recognizes in her complaint that she entered into the Mutual Dispute Resolution Agreement that PHM issued. Dkt. 1, at 7. Indeed, she invokes this agreement to exclude her ERISA claims from any potential arbitration. *Id.* Her challenges to the agreement concern not whether she entered into it, but whether Defendants waived arbitration, whether the agreement is enforceable, its terms, and

that her ERISA claims are too factually intertwined with her Title VII claims to be resolved separately. *See* Dkt. 26, at 4. Further, Peachtree attached to its motion copies of the agreement showing that Tyer signed it. Dkt. 23, at 24. The agreement prominently stated that it includes a binding arbitration provision enforceable by the parties. *Id.* Based on the record, the undersigned finds that Peachtree and Tyer entered into a valid contract under Texas law since there was an offer, acceptance, and meeting of the minds regarding their consent to be bound by the agreement. *See id.*; Dkt. 1, at 7; *Huckaba*, 892 F.3d at 689. A valid arbitration agreement thus exists between the parties.

Next, because the agreement contains a delegation clause, any questions as to its enforceability should be decided by an arbitrator. The agreement provides that any covered claims "shall be subject to arbitration pursuant to this Agreement and shall be adjudicated exclusively by binding arbitration[.]" Dkt. 23, at 19. It also states that "the arbitrator shall have the exclusive authority to resolve any dispute relating to the arbitrability of any individual claim or the enforceability or formation of this Agreement (including all defenses to contract enforcement such as, for example, waiver of the right to compel arbitration)." *Id.* at 21. This language constitutes a delegation clause that assigns gateway questions of arbitrability to the arbitrator. *See Kubala*, 830 F.3d at 204 (enforcing a delegation clause providing that "[t]he arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy"). This clause

also encompasses Tyer's arguments that Peachtree waived arbitration through pre-suit repudiation and that the agreement is unenforceable for various other reasons. Dkt. 26, at 5, 7, 9, 12-13. The agreement also forecloses her argument that her ERISA claims are too intertwined with her Title VII claims: "Enforcement of this Agreement may not be precluded … on the grounds that … a party to this Agreement asserts arbitrable and non-arbitrable claims. In [that situation], either party may file a motion to stay the litigation of non-arbitrable claims until the arbitrable claims are resolved in arbitration[.]" Dkts. 26, at 13-15; 23, at 22.

While Tyer makes arguments as to the *enforceability* of the agreement, she does not dispute the existence of the agreement itself nor does she attack the delegation clause. *See* Dkt. 26. Because a valid arbitration agreement exists and clearly delegates questions about the "arbitrability of any individual claim or the enforceability or formation" of the agreement to the arbitrator, and Tyer did not challenge the delegation clause itself, the undersigned finds that the question of arbitrability should be resolved by the arbitrator. Dkt. 23, at 21; *see Rent-A-Ctr.*, 561 U.S. at 72 (noting that "unless [plaintiff] challenged the delegation provision specifically" the Court "must enforce it" and "leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator"); *Edwards v. DoorDash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration.").

"Section 3 of the [Federal Arbitration Act] mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.'" *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir. 1995); 9 U.S.C. § 3. Further, courts "have the inherent power to manage their dockets, including the authority to enter a stay." *Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *1 (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)); *see also Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016).

When deciding whether the stay non-arbitrable claims, courts consider "(i) whether the same operative facts are involved in the litigation and arbitration; (ii) whether the claims are inseparable; and (iii) whether allowing litigation to proceed would affect arbitration." *Clean Pro Carpet & Upholstery Care, Inc. v. Upper Pontalba of Old Metairie Condo. Ass'n, Inc.*, No. CV 20-1550, 2021 WL 2948923, at *4 (E.D. La. July 14, 2021) (citing *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343-45 (5th Cir. 2004) *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002)). Given that Tyer's ERISA and Title VII claims arise from the same operative facts, *see* Dkt. 1, and as she points out are "inextricably intertwined," Dkt. 26, at 4, the undersigned concludes that this case should be stayed pending arbitration.

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Peachtree's motion to compel arbitration, Dkt. 23, and **STAY** this case pending arbitration.

## V. WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED October 20, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE